85 So.2d 251

**LOUISIANA POWER & LIGHT COMPANY**

v.

**Mrs. Frances Parks SIMMONS et al.**

and

**Mrs. Bessie McInnis et al.**

No. 40572.

Jan. 16, 1956.

trict Court to expropriate a right of way 100 feet wide for the construction of transmission lines carrying 110,000 volts of electricity. The transmission lines were to lead from plaintiff's generating plant near Sterlington, Louisiana, in a westerly direction to an electric substation to be located near Arcadia, Louisiana. Suit No. 13,134 on the docket of the district court was brought against Mrs. Frances Parks Simmons and others, and Suit No. 13,135 against Mrs. Bessie McInnis and others. Although the suits were consolidated for trial in the lower court, two separate judgments were rendered. In each suit the lower court awarded to plaintiff the right of way sought across the lands of the defendants. In the Parks suit the court awarded to the defendants as compensation and damages the sum of $2,076.74, and in the McInnis suit the sum of $758.12.

Plaintiff has appealed seeking a decrease in the amount awarded to the defendants in each suit, and defendants in both suits have answered the appeal. In this answer they denied that Louisiana Power & Light Company was entitled to the right of way because the route selected was not the most direct one, and the selection was arbitrary and in bad faith. They apparently have abandoned this contention, however, and now seek only an increase in the awards made to them by the district court.[1]

Armand F. Rabun, Farmerville, Theus, Grisham, Davis & Leigh, Monroe, for plaintiff-appellant.

Oliver & Oliver, A. E. Montgomery, Jr., Monroe, for defendants-appellees.

HAWTHORNE, Justice.

Louisiana Power & Light Company instituted two suits in the Third Judicial Dis-

---

1. In their answers filed in the lower court and in their answers to the appeal defendants in each of these suits sought to recover an amount in excess of $2,000.

The right of way granted to the plaintiff crosses three separate tracts of land owned by the defendants Mrs. Frances Parks Simmons and others, designated as Parks A, B, and C, and crosses one tract of land owned by Mrs. Bessie McInnis and others, designated as the McInnis Tract. The right of way in Parks Tracts A and B is approximately 1,800 feet in length; in Parks Tract A the area of land within the right of way is 1.96 acres, and in Parks Tract B, 2.13 acres. The right of way across Parks Tract C is approximately 1,250 feet long, and the area of land within this right of way is 2.75 acres. The right of way across the McInnis Tract is approximately 900 feet in length, and the area of land within this right of way is 1.99 acres. In his reasons for judgment the trial judge computed the amounts due to these respective defendants as a result of the expropriation as follows:

To defendants Mrs. Frances Parks Simmons et al.: Parks Tract A: He awarded $1,046.11, which included $500 per acre for 1.96 acres (the area within the right of way), an allowance for the value of the merchantable timber removed to clear the right of way, and a 25 per cent allowance for the future growth of the timber not then merchantable. Parks Tract B: He allowed $688.29, which included $250 per acre for 2.13 acres, an allowance for the value of the merchantable timber, and a 25 per cent allowance for the future growth of the young timber. Parks Tract C: He awarded $342.34, which included $100 per acre for 2.75 acres, an allowance for the value of the merchantable timber, and a 25 per cent allowance for the future growth of the young timber. Thus the total award to these defendants was $2,076.74.

To defendants Mrs. Bessie McInnis et al.: The McInnis Tract: The total award was $758.12, which included $350 per acre for 1.99 acres, an allowance for the value of the merchantable timber, and a 25 per cent allowance for the future growth of the young timber.

There is no dispute between the parties to these appeals as to the quantity, kind, and unit price of the merchantable timber which it was necessary to cut in order to clear the right of way. In the calculation of the amounts due for this timber, however, there were errors which we will correct.

▰▰▰ Louisiana Power & Light Company, however, strenuously urges that the district judge erred in making any allowance "for the young timber which in a few years would be merchantable except for the clearing of the right-of-way". This contention is sound.

We are mindful of the fact that of two tracts of land of the same kind and character, one denuded of all timber and the other covered by young growth, the tract with the young timber certainly has a present higher market value than the denuded land. However, there is no evidence whatever to support such an award in the instant case. In an expropriation suit the market value of the property and the dam-

ages growing out of the expropriation must be determined at the date of the institution of the expropriation suit, and not at some indeterminate time in the future. Louisiana Highway Commission v. De Bouchel, 174 La. 968, 142 So. 142; State v. Landry, 219 La. 721, 53 So.2d 908. Furthermore, an award for damages calculated in the manner used by the trial judge here appears to us to be entirely too remote and speculative, and consequently this award will have to be disallowed.

Under the jurisprudence of this court the measure of compensation to be awarded in expropriation proceedings is generally the market value of the property —that is, the price paid in a voluntary sale between a willing seller and purchaser. Furthermore, in determining this market value, sales of similar property in the vicinity are most important. Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541; State, Through Department of Highways v. Hebert, 227 La. 111, 78 So.2d 528; Caddo Parish School Board v. Bland, 228 La. 393, 82 So.2d 687. It is equally well settled that in suits of this kind the most profitable use to which the land can be put by reason of its location, topography, and adaptability will be considered as bearing upon its market value. Louisville & N. R. Co. v. R. E. E. De Montluzin Co., 166 La. 211, 116 So. 854; City of Shreveport v. Abe Meyer Corporation, 219 La. 128, 52 So.2d 445, and numerous authorities therein cited.

With the above principles of law in mind we will now discuss the value of the property expropriated in the present suit.

The tracts designated as Parks A, Parks B, and McInnis are situated on the west side of the Ouachita River in Union Parish, approximately one-half mile west of the town of Sterlington. According to the record, Sterlington had a population at the time this suit was filed of about 1,700 people, and there were several large industries located there, among these being Louisiana Power & Light Company (appellant herein), Commercial Solvents, Thermotomic Carbon, United Gas, Arkansas-Louisiana Compressor Station, and United Carbons. These industries employed some 700 or 800 persons, a large number of whom lived in or near Sterlington. The population of this community had increased substantially in the past 10 years, and the value of the property there had also increased since the war. Commercial Solvents, according to the record, was going to make improvements to its property costing approximately $20,000,000, which would give employment to an additional 150 or 200 persons. Louisiana State Highway No. 11 from Sterlington to Farmerville crosses the southwest corner of the McInnis Tract, and the tract designated as Parks A adjoins the McInnis Tract on the north. Parks Tract B lies a short distance south of this highway and between it and the old Farmerville-Bastrop gravel highway.

The suitability of these three tracts for residential or subdivision purposes at the

time this suit was filed is fully established by the record in this case, and this factor must be considered under our jurisprudence as bearing upon their market value. Plaintiff offered some testimony during the trial that these tracts had a value of from $20 to $40 per acre, but the witnesses who set these values treated the property as ordinary cut-over lands, and plaintiff now concedes in this court that under our test of suitability and adaptability these properties have a value of not less than $200 per acre. The record also discloses that around 1949 Elizabeth Harris sold two lots of one-half acre each for $250 per lot. The property she sold was in the vicinity of Parks Tract A and the McInnis Tract, although somewhat farther west from Sterlington. It is true that these lots were located near the junction of the Farmerville-Sterlington blacktopped highway and the old Farmerville-Sterlington gravel road, a fact which may have increased their value. However, Parks A and the McInnis Tract are a great deal nearer to the Town of Sterlington than the above half-acre lots, and defendants offered the testimony of numerous witnesses familiar with real estate values in this vicinity who valued these tracts at from $200 to $500 per acre.

The trial judge found that Parks A had a value of $500 per acre, stating in his reasons for judgment that this property was located on an improved highway. The judge was evidently confused, as Parks A is not on a highway, but is immediately north of the McInnis Tract, the southwest corner of which is crossed by the Sterlington-Farmerville blacktopped highway. Evidently the judge in making this award had in mind the McInnis Tract. Under the circumstances we think that the award of the trial judge as to Parks A is somewhat excessive. Accordingly we find the value of this tract to be $350 per acre, and the amount which should be awarded for the 1.96 acres of this tract within the right of way is therefore $686.

As to the McInnis Tract, we think that a value of $400 per acre would do justice between the parties, as this tract does have a considerable frontage on an improved highway, which Parks A does not, and for this reason in our view this tract has a greater value. We will accordingly increase the award of the trial judge of $250 per acre for this tract to $400 per acre, or a total of $796 for the 1.99 acres included within the right of way expropriated by the plaintiff.

As we have pointed out earlier in this opinion, Parks B is located between an improved blacktopped highway and the old Bastrop-Farmerville gravel road. About three years before the institution of this suit the owners of Parks Tract B had it surveyed and laid out into lots. However, the plat was never filed for record, and no sales were made from it. Consequently we do not consider this tract to be an existing subdivision, and the mere fact that this survey was made does not in any way increase the present market value of the

property. During the years 1943–1945, however, several sales were made from this tract, or from other lands owned by these defendants adjoining this tract, at prices ranging from $400 per acre to $1,200 per acre. It is true that in each of these sales there was a house or shack on the property sold, but in the case of the two sales at $1,200 per acre there is testimony in the record that the owners of the property had purchased two houses for $125 each which they moved on these lots prior to the sales. We realize that these sales are remote in time and that due to the houses on the lots they do not fix a value with certainty on the remaining portion of the tract which was unimproved. However, the evidence in this record conclusively shows that when this suit was brought the value of property in the vicinity of Sterlington had substantially increased since these sales were made. Appellant contends that these two lots which brought the highest price were located on the lower end of the Parks land of which Parks B forms a part, facing or near the Farmerville-Sterlington highway, and that, due to the complete dissimilarity which exists between the lands here expropriated in Parks B and the improved lots described in these sales, the sale price of these properties should not be given any consideration by us. We have taken all these factors into consideration in arriving at the value of the property expropriated here. In addition to evidence of sales in the neighborhood, witnesses who were familiar with Parks B and the value of real estate in this area testified that this land had a value of from $500 to $800 per acre. One of the co-owners herself placed a value of $1,000 per acre on it. Taking all the above evidence into consideration, we think that a fair value for this Parks B property would be $500 per acre. Therefore, for the 2.13 acres of this tract included in the right of way the award will be $1,065.

Appellant in brief says that the lower court erred in basing its award of compensation for the right of way involved in the above three tracts, not upon the value presently possessed by the land for the use to which it is being put, but upon the speculative value of the land if it should in the future be used for residential purposes. The answer to this contention is that in computing the values as we have above we have arrived at the market value of the property at the time of the taking, considering its suitability for subdivisions and residential sites, and we think the record amply supports us in this conclusion.

Parks C is located approximately four miles west of Sterlington and is a part of the Loch Lomond Plantation. The land lying within the boundaries of this tract was open and in cultivation at the time these suits were tried in the lower court, except for a small wooded portion along a bayou. Witnesses who testified at the trial valued this property at from $100 to $400 or $500 per acre. The trial judge fixed the value of this Parks C Tract at

$100 per acre, which appellees contend we should increase to $200 per acre. After considering the testimony we are of the view that the value fixed by the trial judge is somewhat low, and ordinarily we would increase it. However, taking into consideration that the right of way here expropriated is only a servitude and that the defendants will still retain some use of the property,[2] which is agricultural land and used to grow crops, we will accordingly affirm this award of $275 for the 2.75 acres comprising the area of the right of way expropriated in Parks C.

■ Appellant finally contends that the lower court committed error in awarding to these defendants the full fee value of the land expropriated for this right of way. It states that the right of way here expropriated is merely a servitude, and that under the judgment of the lower court the defendants retain full use of the property for any purposes which do not constitute a hazard to the electrical transmission lines, such as the growing of timber or the erection of some structure. It cites in support of this contention Texas Pipe Line Co. v. Johnson, 223 La. 380, 65 So.2d 884, 38 A.L.R.2d 785, where the plaintiff paid only one-third of the market value of the land expropriated for a right of way.[3]

We have already taken into consideration in affirming the award of the district judge as to Parks Tract C the fact that the right of way here expropriated is a servitude and that the defendants still retain some use of it, as this Parks C Tract is used for agricultural purposes. In fixing the present market value of Parks Tracts A and B and the McInnis Tract, however, we have taken into consideration the fact that these tracts are adaptable for subdivision or residential purposes. The construction of the 110,000-volt electric transmission lines along this right of way has completely destroyed the suitability of the area within the right of way itself for residential or subdivision purposes, as the owners of these tracts can never build any structure on the servitude itself. Moreover, these tracts are cut-over lands and are not being used for the growing of crops, and no timber can be grown within the area of the right of way. Consequently, for all practical purposes there is no difference between the value of the servitude and the value of the fee as to these three tracts. See Texas Pipe Line Co. v. National Gasoline Co. of Louisiana, Inc., 203 La. 787, 14 So.2d 636.

This identical contention was made in brief filed in this court in the case of Texas Pipe Line Co. v. Barbe and Moss, 229 La.

---

2. Article 777 of the Civil Code provides that the owner of the estate which owes the servitude can do nothing tending to diminish its use or make it more inconvenient.

3. In that case the expropriated land was being used for agricultural purposes, as is Parks C in the instant case.

260, 85 So.2d 260.[4] As a factor in determining the market value of the property actually expropriated in the Barbe and Moss case, its adaptability and suitability for industrial purposes was considered, and this court granted to the defendants there the full fee value of the property taken for the servitude. To reduce the award in the instant case for the right of way across these three tracts because it is only a servitude would be contrary to our holding in Texas Pipe Line Co. v. Barbe and Moss.

Appellees' request for an increase in the award due to severance damages to the property adjoining the right of way is without merit, as there is no evidence in the record which in our opinion would justify such an award.

We shall now compute the awards, correcting the errors in the calculation of the value of the timber (over which there is no dispute as to the quantity, kind, and unit price) which had to be removed in clearing the right of way.

Suit No. 13,134, in which Mrs. Frances Parks Simmons et al. are defendants:

Parks Tract A:

| | |
|---|---|
| Merchantable pine saw timber, 510 feet B.M. @ $30.00 per thousand | $ 15.30 |
| Merchantable hardwood saw timber, 1586 feet B.M. @ $12.50 per thousand | 19.82 |
| Merchantable pine pulpwood, 1.47 cords @ | |
| $3.50 per cord | $ 5.14 |
| Merchantable hardwood pulpwood, 8.34 cords @ $2.00 per cord | 16.68 |
| 1.96 acres expropriated @ $350.00 per acre | 686.00 |
| **Total due for this tract** | **$ 742.94** |

Parks Tract B:

| | |
|---|---|
| Merchantable pine saw timber, 2743 feet B.M. @ $30.00 per thousand | $ 82.29 |
| Merchantable hardwood saw timber, 979 feet B.M. @ $12.50 per thousand | 12.23 |
| Merchantable pine pulpwood, 3.6 cords @ $3.50 per cord | 12.60 |
| Merchantable hardwood pulpwood, 8.64 cords @ $2.00 per cord | 17.28 |
| 2.13 acres expropriated @ $500.00 per acre | 1065.00 |
| **Total due for this tract** | **$1189.40** |

Parks Tract C:

| | |
|---|---|
| Merchantable pine saw timber, 552 feet B.M. @ $30.00 per thousand | $ 16.56 |
| Merchantable hardwood saw timber, 2816 feet B.M. @ $12.50 per thousand | 35.20 |
| Merchantable pine pulpwood, .5 cords @ $3.50 per cord | 1.75 |
| Merchantable hardwood pulpwood, .88 cords @ $2.00 per cord | 1.76 |
| 2.75 acres expropriated @ $100.00 per acre | 275.00 |
| **Total due for this tract** | **$ 330.27** |
| **Total award due to defendants in Suit No. 13,134** | **$2262.61** |

Suit No. 13,135, in which Mrs. Bessie McInnis et al. are defendants:

McInnis Tract:

| | |
|---|---|
| Merchantable pine saw timber, 201 feet B.M. @ $30.00 per thousand | $ 6.03 |
| Merchantable hardwood saw timber, 2440 feet B.M. @ $12.50 per thousand | 30.50 |
| Merchantable pine pulpwood, 2.10 cords @ $3.50 per cord | 7.35 |
| Merchantable hardwood pulpwood, 9.3 cords | |

4. Two rehearings were granted in the Barbe and Moss case to consider the question of severance damages to the remaining portion of defendants' lands.

However, the award for the value of the land taken was settled on first hearing, and the judgment in that case is final on this question.

@ $2.00 per cord............................ $  18.60
1.99 acres expropriated @ $400.00 per acre.... 796.00

Total due for this tract............... $ 858.48

In Suit No. 13,134, Louisiana Power & Light Company v. Mrs. Frances Parks Simmons et al., the judgment is amended by increasing the amount awarded to these ·defendants` to $2,262.61. Otherwise the judgment is affirmed.

In Suit No. 13,135, Louisiana Power & Light Company v. Mrs. Bessie McInnis et al., the judgment is amended by increasing the amount awarded to these defendants to $858.48. Otherwise the judgment is affirmed.

Louisiana Power & Light Company is to pay all costs of both suits.

FOURNET, C. J., absent.